Schnabel Company, Appellant, *v.* Pittsburgh
School District.

Argued April 19, 1955. Before RHODES, P. J., HIRT,
ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Morris M. Berger,* with him *Franklyn E. Conflenti,* for appellant.

*Oscar G. Peterson,* Assistant Solicitor, with him *Mortimer B. Lesher,* Solicitor, *Niles Anderson,* Assistant Solicitor, attorneys for appellee, School District of Pittsburgh.

*J. Frank McKenna, Jr.,* Solicitor, with him *Robert Engel,* Assistant Solicitor, attorneys for appellee, City of Pittsburgh.

OPINION BY HIRT, J., July 21, 1955:

The Act of June 20, 1947, P. L. 745, 24 PS §582.1 et seq., authorized the School District of the City of Pittsburgh to impose an annual license tax on wholesale and retail vendors or dealers in goods, wares and merchandise. On the authority of the Act of June 25, 1947, P. L. 1145, 53 PS §2015.1 et seq. the City of Pittsburgh enacted its Ordinance No. 488, effective November 29, 1947, which imposed a similar tax on the same classes of dealers.

Plaintiff in this record concedes that it is a Pennsylvania Corporation "engaged in business in the City of Pittsburgh, the nature of which is the manufacture of truck bodies and truck units and the sale of various types of trucks, buses and other automotive equipment." Identical questions are involved in the appeals before us. They each relate to a mercantile license tax on a part of plaintiff's business described in the following stipulation of counsel, in lieu of tes-

timony, upon which the validity of the assessments was determined in the court below. It was stipulated that "Petitioner [the present appellant in these cases] sells to customers, *residents of Pennsylvania* outside of the limits of the City and the School District, through salesmen who solicit orders at the customer's places of business. That two types of sales are involved: (1) Funeral cars; (2) Bus bodies, which are to be installed on chassis furnished by the customers. In both instances, the customers take the delivery at the plant of the Superior Motor Coach Corporation, in Lima, Ohio. In no instance does Petitioner have physical possession of either the funeral cars or the bus bodies. In the course of business, Petitioner invoices its customer. However, the customers make payment at the plant of the Superior Motor Coach Corporation, at Lima, Ohio, at time of delivery. As to funeral cars, the chassis are delivered by the automobile manufacturer to Superior Motor Coach Corporation, where the funeral body is installed, and is then delivered to the customer at Lima, Ohio. As to the buses, the customer, himself, furnishes the chassis, has it delivered to the Superior Motor Coach Corporation, at Lima, Ohio, where Superior installs the body-buses on the chassis, and then makes delivery to the customer at the factory . . . In both instances, the customer pays his money for the amount of the invoice to Superior at the time he takes possession of the merchandise. Superior then credits Schnabel with the amount to which Schnabel is entitled as its portion of the profit on the deal." (Italics added).

Basically a mercantile license tax, as the name implies, is a tax on the privilege of doing business in the taxing district. *Keystone Metal Co. v. Pittsburgh,* 374 Pa. 323, 330, 97 A. 2d 797. The dollar value of the business based on gross receipts merely measures the

amount of the tax at the applicable rate. Accordingly, it does not necessarily follow in the present cases that certain transactions consummated in Pittsburgh do not enter into a computation of the tax because delivery of the thing sold in each instance and payment for it by the purchaser occurred outside the taxing district in a neighboring state. The orders for the funeral cars and buses in question were taken by plaintiff's agents and in law the sales contracts must be regarded as having been consummated in Pittsburgh, when the orders were accepted by plaintiff there. *Wieman and Ward Co. v. Pittsburgh et al.,* 381 Pa. 535, 113 A. 2d 719. (Filed May 4, 1955). The stipulated fact that plaintiff invoiced the purchaser for the full purchase price in each instance characterizes these sales as a part of plaintiff's business as a dealer. And the fact that the invoice was made payable directly to the Ohio corporation which supplied the cars or bodies does not affect the nature of the transaction as a part of the plaintiff's business consummated in Pittsburgh. Plaintiff received its profit on each sale from the Ohio company in the same amount that it would have retained out of the total sales price if it had been made payable to it. The consummation of these entire transactions, with the exception of delivery and the method adopted by plaintiff to collect its profit, occurred within both taxing districts. In these sales plaintiff therefore was doing business in Pittsburgh (*New v. Robinson-Houchin Optical Co.,* 357 Pa. 47, 53 A. 2d 79) and as such was assessed for the privilege both by the city and by the school district.

There is no merit in appellant's contention that the tax is invalid because the transactions were in interstate commerce. This phase of the appeal is ruled by *Keystone Metal Co. v. Pittsburgh,* supra, and *The Wieman and Ward Co. v. Pittsburgh,* supra. The fol-

lowing quotation from the opinion in the *Keystone* case (with citation of authorities omitted) is pertinent here: "While it is quite clear that a direct State tax upon the privilege of conducting interstate commerce is invalid . . . it has also been held by the Supreme Court of the United States that, although a transaction viewed as a whole may be one in interstate commerce, there may be certain 'intrastate events' . . . or 'local activities' . . . in connection therewith that permit the imposition of a State tax; . . . The solution of the question whether a State tax falls within this latter category depends entirely on the particular facts in each instance and may, admittedly, require the drawing of 'nice distinctions.' It was said in McLeod v. J. E. Dilworth Co., 322 U. S. 327, 329: 'Once it is recognized, as it long has been by this Court, that federal and state taxation do not move within wholly different orbits, that there are points of intersection between the powers of the two governments, and that there are transactions of what colloquially may be deemed a single process across state lines which may yet be taxed by the State of their occurrence, "nice distinctions are to be expected," Galveston, H. & S. A. Ry. Co. v. Texas, 210 U. S. 217, 225.' " Plaintiff in Pittsburgh sold funeral cars and buses to residents of Pennsylvania and all of the "intrastate events" and "local activities" of plaintiff in the business transactions involved in the instant appeals, identify the Schnabel Company as a dealer liable to the city and to the school district for the taxes assessed.

The appellant is also liable for interest and penalties in each instance for failure to pay the tax when due. The lower court, in sustaining the validity of the assessments, dismissed the appeals but held that appellant was not liable for penalties under the statute and the ordinance. Section 9(b) of the Act of June

20, 1947, provides that the collection of interest and penalty by the School District is mandatory and an identical provision in the ordinance imposes the same duty on the city. There is nothing in the circumstances which justifies the remission of penalties in the present instances. Cf. *Graybar Elec. Co. Inc. v. Pitts. Sch. Dist.*, 378 Pa. 294, 106 A. 2d 413; *Goldstein v. Pittsburgh School District*, 372 Pa. 188, 93 A. 2d 243.

The orders are reversed to the extent that they remit penalties, but otherwise the orders are affirmed.